UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER FURLONGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:14-cv-10389-FDS |
| BOSTON MEDICAL CENTER, ) | |
| and WALTER DABEK ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF FURLONGE'S DAUBERT AND RULE 702 MOTION TO EXCLUDE PORTIONS OF PROPOSED EXPERT TESTIMONY OF AARON DOLGOFF**

**I.   INTRODUCTION**

Defendants have retained economist Aaron Dolgoff ("Dolgoff") to conduct a financial analysis and provide expert testimony concerning any alleged front pay due Plaintiff Furlonge. Plaintiff's "Daubert and Rule 702 Motion to Exclude Portions of Proposed Expert Testimony of Aaron Dolgoff" ("Motion to Exclude") does not challenge Dolgoff's qualifications. Nor does the Motion to Exclude challenge whether Dolgoff's methodology has been tested, whether it has been subject to peer review and publication, its error rate, or whether the approach is generally accepted in the scientific community. Left without any reason within the *Daubert* framework to preclude Dolgoff's testimony, Plaintiff tries to exclude his opinion by labeling it as an inadmissible "legal opinion." Yet Dolgoff has not offered any legal opinion. Plaintiff's argument is nothing more than an attempt to avoid a match-up of dueling experts and preview its jury instructions argument for the court. Plaintiff's attempts to discredit and/or argue with Dolgoff's expert opinion are more appropriately addressed at trial by "vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof,'' *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993), as the arguments made have no bearing on the admissibility of Dolgoff's opinion.  Therefore, the Motion should be denied.

## II.   BACKGROUND

The Motion to Exclude is deficient in several respects, the most egregious of which is its conflation of Dolgoff's opinion on calculating a front pay award with the concept of discounting any number for present day value.  Dolgoff's opinion concerns the means by which the finder of fact should arrive upon its initial front pay award.  In other words, how should the jury determine (1) how long Plaintiff would have worked until she voluntarily resigned or retired; and (2) how much would Plaintiff have been paid over that time?

Dolgoff opines that Furlonge's front pay must be discounted to take into account the possibility that any number of unforeseeable factors could disrupt and shorten Furlonge's expected worklife.  For example, illness, disability, the need to take care of a disabled dependent, layoffs related to merger, a voluntary decision to leave, and a host of other reasons could shorten Furlonge's expected worklife.  Front pay damages must take into account the possibility that any of these events may occur, for it is unrealistic to assume with 100 percent certainty that Furlonge would have remained employed at BMC until retirement earning the same amount she last earned there.  In addition, any front pay award must take into account uncertainty regarding the level of inflation-adjusted pay that Plaintiff would receive.  Thus, Dolgoff accounts for such uncertainty by discounting the amount of money Furlonge was projected to have earned had she remained at BMC until retirement at an inflation-adjusted rate of 8.9 percent, reflecting the lower bound measure of the typical individual's unsecured borrowing rate.

Dolgoff's method of calculating front pay is different from that of Plaintiff's expert, Dr. Craig Moore, because the latter does not account for the risk to Plaintiff's worklife in any manner. Rather, Dr. Moore assumes that Plaintiff would have actually worked the intended period at the same pay rate as she was receiving when she left Boston Medical Center, and discounts using a risk-free rate of interest.

### III. DOLGOFF IS PROVIDING AN ECONOMIST'S OPINION ON FRONT PAY, NOT A LEGAL OPINION

Plaintiff's attack on Dolgoff's opinion is based on the argument that Dolgoff's opinion is somehow an inadmissible "legal opinion." It is nothing of the sort. Dolgoff is not providing a "legal opinion." Dolgoff is not attempting to assume the role of the Court in opining on the law regarding any issue in this case. Nor does he articulate the principles of law governing the deliberations of the jury. Indeed, he could not: he is not a lawyer and has received no legal training. *See* Expert Report of Aaron Dolgoff, Dkt 102-1 at ¶¶ 1-3. By arguing that Dolgoff has done so, Plaintiff makes obvious that her attempt to exclude Dolgoff's testimony is nothing more than an effort to advance her own damages theories (as voiced by her own expert witness) over those theories advanced by Dolgoff.

Dolgoff's expert opinion is rooted not in the interpretation of law, but is based on economic theories as they apply to determining the certainty of the duration of the Plaintiff's working life and the level of Plaintiff's future compensation. In the event that the trier of fact determines that Plaintiff is entitled to an award of front pay, it will need to determine for how long Plaintiff would have worked; at what compensation level; and to what extent that future pay should be discounted to take into account the unpredictability of that period of time or level of pay. Dolgoff's expert opinion will assist the trier of fact to determine the latter of these two

findings, specifically how to calculate any alleged front pay due Furlonge. Therefore, Dolgoff's expert opinion is well within the sphere of acceptable expert opinion evidence.

## IV. CASE LAW CITED BY PLAINTIFF IS INAPPOSITE AND DOES NOT PROVE DOLGOFF'S METHODOLOGY IS "INACCURATE"

Plaintiff's argument that Dolgoff's testimony should be excluded because it is a "legal opinion" is a guise for its actual attack on Dolgoff's methodology. Plaintiff has labeled Dolgoff's testimony as "inaccurate" and has claimed that it "has been rejected by numerous courts." Neither is true. In support of its argument, Plaintiff relies principally on *Jones & Laughlin Steel Corp. v. Pfiefer*, 462 U.S. 523 (1983). There, the parties were not in dispute about the *amount* of front pay to be discounted; the dispute was over the discount rate. Nothing in Dolgoff's report suggests that he disagrees with Plaintiff or *Jones* that "[o]nce it is assumed that the [plaintiff] would definitely have worked for a specific terms of years, he is entitled to a risk-free stream of future income to replace his lost wages." Motion at 3 (citing *Jones* at 537). In fact, Dolgoff agrees that *if* it can be definitively established that Furlonge would *definitely* work for a specific term of years, she should be entitled to a risk-free stream of future income. But the crux of Dolgoff's opinion—and the main point of contention between his opinion and Dr. Moore's—is that Dolgoff does not make such an assumption. Dolgoff and Dr. Moore are in dispute about the amount of front pay to be discounted because Dolgoff's calculation takes into account the uncertainty of the level of future earnings while Dr. Moore's does not. Therefore, *Jones* is inapposite and does not support Plaintiff's contention that Dolgoff's methodology is "inaccurate" or that it has been rejected by numerous courts, including *Jones*.

Plaintiff's reliance on *McDonald v. Federal Laboratories, Inc.*, 724 F.2d 243 (1st Cir. 1984), is similarly misplaced. There, the jury instruction already presumed an award amount for some future time period. Therefore, like in *Jones*, there was no dispute over the pre-discount

- 4 -

amount to be awarded. Again, in the present case, Dolgoff and Dr. Moore do not arrive at the same pre-discount front pay amount because Dolgoff's testimony requires that any front pay award be adjusted for uncertainty. *McDonald*, therefore, also misses the point.

Finally, Plaintiff places great emphasis on model jury instructions. Plaintiff mistakenly contends that a risk-free discount rate is required by the Federal Jury Practice and Instructions and similarly by the Massachusetts Superior Court Civil Practice Jury Instructions. The Court should not read these jury charges as precluding consideration of a risk-adjusted discount rate. The Massachusetts Superior Court Civil Practice Jury Instructions for reducing front pay to present value provide, in part: "in making an award for future damages, you must determine the amount of money that, if invested today at a reasonable rate of interest, would in the future provide the plaintiff with the amount of money that you calculated [he/she] will lose in the future as a result of the defendant's conduct." Nothing in that provision precludes consideration of a risk-adjusted discount rate. *See In re Magna Cum Latte Inc.*, 2008 Bankr. LEXIS 3736 (Bankr. S.D. Tex. May 9, 2008) (rejecting similar California jury instruction for risk-free discount rate to measure the present value of projected lost profits and adopting risk-adjusted discount rate of 15 percent).

### V. DOLGOFF'S METHODOLOGY IS RELIABLE AND GENERALLY ACCEPTED AND ANY DISAGREEMENT IS BEST SUITED FOR CROSS-EXAMINATION, AS IT GOES TO WEIGHT, NOT ADMISSIBILITY

Dolgoff's methodology for discounting front pay to reflect the uncertainty of the level of future earnings is reliable and has been accepted by various courts. *See e.g.*, *Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 326-27 (7th Cir. 1992) (finding that expert witness on front pay in ADEA case "failed to discount (multiply) each year's projected earnings loss by the probability that Price would have lived long enough to obtain those earnings" and that because

"[t]he probability was not a hundred percent[,] . . . the estimate of lost earnings should have been scaled down accordingly"); *United States v. Fountain*, 768 F.2d 790, 802 (7th Cir. 1985) (describing that in the 7th Circuit, a "responsible calculation of lost future earnings would . . . require[] estimating first what [an individual's] salary would have been in each year until his retirement, then the probability that he would actually be alive and working in those years, and finally the correct discount rate by which to reduce the estimated future earnings to a present, lump-sum value"); *Goico v. Boeing Co.*, 347 F. Supp. 2d 986, 993 (D.C. Kan. 2004) ("Some adjustment should be made here to reflect the fact that front pay becomes more speculative as it is projected father into the future. . . . A slightly higher discount rate than might otherwise apply is one way of reflecting the risk of such contingencies [such as a material change in plaintiff's circumstances or in the business operations of the defendant] occurring."); *Wilson v. B.F. Goodrich*, 292 Ore. 626, 631(1982) (in testifying about the present value of future earning losses, "an expert may testify to economic assumptions that necessarily rest on estimates and predictions of uncertain future events"); *Energy Capital Corp. v. U.S.*, 302 F.3d 1314, 1334 n.9 (Fed. Cir. 2002) (risk-free discount rate may be appropriate when "the calculation of the anticipated stream of lost profits [was] adjusted to risk prior to discounting"); *Southern Pac. Comm'ns. Co. v. America Tel. & Tel. Co.*, 556 F. Supp. 825 (D.D.C. 1982) ("It is conceptually wrong to discount lost future profits at a simple conservative rate. . . . Using a rate for a conservative investment would, in practical effect, eliminate the risk factor that would have confronted the plaintiff had he remained in his business. Stated another way, using a discount rate for a conservative investment would give the plaintiff an award which he could immediately invest in a low-risk investment and have the certainty of receiving the same return he would have hoped to earn in his former high-risk business.").

Dolgoff employed a reliable and generally accepted methodology for calculating any alleged front pay owed to Furlonge. Thus, to the extent that Plaintiff disagrees with his methodology, Plaintiff's disagreement goes to the weight, not the admissibility, of Dolgoff's opinion. *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 487 (1st Cir. 2010) ("Disputes about an expert witness's methodology go to the weight, not the admissibility, of the opinion."). Therefore, Plaintiff's disagreements with Dolgoff's methodology are best suited for cross-examination. *Bado-Santana v. Ford Motor Co.*, 482 F. Supp. 2d 192, 197 (D.P.R. 2007) ("Challenges to the methodology used by an expert witness are usually adequately addressed by cross examination.") (citing *United States v. Diaz*, 300 F.3d 66, 76-77 (1st Cir. 2002)).

The content of Dolgoff's article on pre-judgment interest, as cited on pages 3 and 4 of the Motion, is also irrelevant to the admissibility of his opinion. This article addresses discount rates in the context of pre-judgment interest. When calculating pre-judgment interest, there is no need to discount for uncertainty of an uncertain forecast because a damage amount has already been determined as of a date of harm. Front pay requires a different calculation that takes into account the unpredictability of the plaintiff's future working life and compensation. Therefore, the cited article is unrelated and not inconsistent with Dolgoff's opinion in this case. Further, even if it were inconsistent, that inconsistency would have no bearing on the admissibility of Dolgoff's opinion, and any perceived inconsistencies can be addressed on cross-examination.

## VI.  CONCLUSION

Plaintiff's argument that Dolgoff's testimony must be excluded because it amounts to a "legal opinion" is a façade for Plaintiff's disagreement over the credibility and/or the persuasiveness of Dolgoff's expert opinion. Dolgoff's opinion, which discounts front pay to account for the uncertainty that Furlonge will work for a definitive time period or will earn a

definitive level of income, is reliable, generally accepted, and not a question of admissibility but rather best suited for cross-examination. Therefore, the Court should deny Plaintiff's Motion to Exclude.

> **BOSTON MEDICAL CENTER and WALTER DABEK**
>
> By their attorneys,
>
>    */s/   Kristyn DeFilipp*
> James W. Bucking, BBO# 558800
> *jbucking@foleyhoag.com*
> Kristyn DeFilipp, BBO# 676911
> *kbuncedefilipp@foleyhoag.com*
> Foley Hoag LLP
> 155 Seaport Boulevard
> Boston, MA  02210
> Tel: (617) 832-1000
> Fax: (617) 831-7000

Dated:  September 27, 2016

- 9 -

## CERTIFICATE OF SERVICE

I, Kristyn DeFilipp, hereby certify that on September 27, 2016, a true copy of the above document, filed through the CM/ECF system, will be sent electronically to the registered participants of record as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


 *Kristyn DeFilipp*

Kristyn DeFilipp